# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **ROBERT L. DOLL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:15-cv-00653** |
| **v.** | ) | **Judge Sharp / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Plaintiff has filed a "Brief in Support of Motion for Judgment on the Administrative Record." Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

## I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI on May 4, 2012, and May 15, 2012, respectively, alleging that he had been disabled since March 29, 2012, due to "heart failure, high blood pressure, fluid on lungs, [and] kidney failure."  Docket No. 10, Attachment ("TR"), TR 235, 237, 257.  Plaintiff's applications were denied both initially (TR 113, 114) and upon reconsideration (TR 135, 136).  Plaintiff subsequently requested (TR 86-88) and received (TR 49-85) a hearing.  Plaintiff's hearing was conducted on May 8, 2014, by Administrative Law Judge ("ALJ") Elizabeth P. Neuhoff.  TR 49.  Plaintiff and vocational expert ("VE"), Rebecca Williams, appeared and testified.  *Id.*  During Plaintiff's hearing, the ALJ determined that, in order to obtain complete information, she should send Plaintiff to have a back x-ray and an updated physical consultative examination.  TR 83-84.  Plaintiff was sent to two doctors, whose records and reports were sent to Plaintiff's attorney.  *See* TR 35.  Plaintiff's attorney thereafter requested a supplemental hearing.  *Id.*  Plaintiff's supplemental hearing was conducted on January 29, 2015, also by ALJ Neuhoff.  TR 32-48.  Plaintiff and VE Kenneth Anchor appeared and testified.  *Id.*

On February 6, 2015, ALJ Neuhoff issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 12-14.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2.  The claimant has not engaged in substantial gainful activity since March 29, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease; hypertension; congestive heart failure; and multilevel degenerative disc disease and osteophytes of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he is limited to lifting or carrying twenty pounds occasionally and ten pounds frequently; sitting, standing, or walking six hours total each in an eight-hour workday; never climbing ladders, ropes, or scaffolds; frequently climbing ramps and stairs; and avoiding concentrated exposure to fumes, odors, gases, or dusts, as well as extreme temperatures and all hazards in the workplace such as unprotected heights and moving machinery.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 8, 1967 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 29, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 18-26.

On March 20, 2015, Plaintiff timely filed a request for review of the hearing decision. TR 8-11. On April 10, 2015, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors

were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving

his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1]  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

> claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.,* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) failing to properly evaluate the medical opinion evidence of record and provide sufficient reasons for the weight given; and (2) failing to properly account for inconsistencies between heavily weighed medical opinions and the ALJ's residual functional capacity ("RFC") finding. Docket No. 15. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.* at 20.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Consideration of the Medical Evidence

Plaintiff argues that the ALJ erred by failing to properly evaluate and give sufficient

weight to the medical opinion of his treating physician, Dr. Michael Lewis, and by misrepresenting the evidence in the record related to that opinion. Docket No. 15, p. 9-10. Plaintiff notes that Dr. Lewis has been his treating physician since 2008, and argues that the ALJ failed to consider the nature, length, or frequency of Dr. Lewis's interactions with Plaintiff. *Id*. at 11-14. Plaintiff contends that Dr. Lewis provided an August 2013 Medical Source Statement, which included limitations on Plaintiff's abilities that were supported by Plaintiff's symptoms and conditions. *Id.* at 11. Plaintiff argues that "the medical evidence is consistent with and provides substantial support for Dr. Lewis's opinions," but that the ALJ "completely rejected Dr. Lewis's opinion and failed to consider the required regulatory factors." *Id.* at 14-15. Plaintiff further argues that the ALJ "failed to provide any explanation whatsoever" regarding her decision that many of Dr. Lewis's assessed limitations were overly restrictive, and contends that the ALJ did not explain her conclusion that Dr. Lewis's opinion "is 'not entitled to controlling weight as it is inconsistent with other substantial evidence . . . .'" *Id*. at 12, *quoting* TR 24.

Plaintiff also contends that the term "some weight," which the ALJ assigned to Dr. Lewis's opinion, is ambiguous and unclear. *Id.* at 16. Plaintiff further contends that, in discounting Dr. Lewis' opinion, the ALJ misrepresented medical evidence regarding Plaintiff's control of his conditions, arguing that the medical evidence shows that, contrary to the ALJ's decision, Plaintiff's hypertension was, in fact, not controlled. *Id*. at 12-13. Plaintiff further asserts that it was error for the ALJ to find that "Dr. Lewis's assessment is somewhat questionable as he noted that he did not complete disability paperwork unless he was told exactly what was wanted." *Id*. at 13, *quoting* TR 24. Plaintiff challenges the implication that he would inform or instruct Dr. Lewis' responses on the Medical Source Statement. *Id.* Plaintiff further

argues that the ALJ was required to re-contact Dr. Lewis for clarification of his opinion. *Id.* at 14.

Plaintiff additionally contends that the ALJ assigned an RFC "based on her own whimsy," and subsequently adopted the opinions of the State agency medical consultants because their opinions were consistent with that RFC. *Id*. at 16. Plaintiff expresses concern that the ALJ described the examination of Plaintiff conducted by consulting physician Thomas Dake, M.D., as an orthopedic consultative examination, although Dr. Dake is a family medicine physician, not an orthopedist. *Id.* at 16-17. Plaintiff asserts that the ALJ "clearly believed this evaluation and report to be from an orthopaedic specialist," which was "a significant, material mischaracterization," because the ALJ "quite likely" weighed Dr. Dake's opinion more heavily because the Regulations require that more consideration and weight be given to the opinion of a specialist opining within his area of expertise. *Id*. at 17.

Plaintiff further argues that, although the ALJ stated that she gave great weight to the opinion of consulting physician Babar Parvez, M.D., she did not address all aspects of his opinion and mischaracterized his conclusions and opinions, particularly Dr. Parvez's requirement that Plaintiff be given medical clearance before returning to work. *Id*. at 18-20. Plaintiff contends that Dr. Parvez emphasized Plaintiff's uncontrolled high blood pressure and made clear that Plaintiff has significant limitations on his physical abilities. *Id.* at 18-19.

Defendant responds that the ALJ "fully considered the records from Dr. Lewis and gave appropriate consideration to the doctor's opinion." Docket No. 16, p. 4. Defendant argues that the ALJ's decision to accord Dr. Lewis's opinion "some weight" and find that it was overly restrictive is supported by substantial evidence in the record, particularly by Plaintiff's

unremarkable examinations and by Dr. Lewis's own treatment notes. *Id.* at 4, 7. Defendant

notes that the ALJ pointed out Dr. Lewis's significant treating history of Plaintiff and outlined

that treatment history within the records. *Id.* at 6, *referencing* TR 19. Defendant asserts that

Plaintiff's records reflect "fairly benign findings," and that these records were not consistent with

the restrictions given by Dr. Lewis in his Medical Source Statement. *Id.* at 6-7. Defendant

argues that there was no support for Dr. Lewis's restrictions involving missed workdays or

occasional uncontrolled hypertension. *Id.* at 7-8. Defendant contends that, despite the fact that

treatment notes indicate that Plaintiff occasionally had high blood pressure, at other times his

blood pressure was "stable and better controlled." *Id.* at 8. Defendant argues that, "[d]espite the

occasional high blood pressure, 'other' substantial evidence from the consulting also [*sic*]

doctors indicated that this was not so restricting." *Id.* at 8, *citing* TR 436, 443. Defendant

contends that the ALJ could properly discount Dr. Lewis's opinion as being inconsistent with

other evidence or based on insufficient clinical findings. *Id.* at 8. Defendant additionally asserts

that the ALJ did consider and document all of the factors included in 20 CFR § 404.1527. *Id.* at

8, *citing* TR 21-24. Finally, Defendant asserts that the ALJ was not required to re-contact Dr.

Lewis for clarification of his opinion because the record is sufficient. *Id.* at 9.

Regarding the other medical opinions of record, Defendant argues that the ALJ's

evaluation is consistent with SSA's regulations and policies. *Id.* at 9. Defendant contends that

the ALJ's assignment of great weight to the opinions of the State agency doctors (including

Nathaniel Briggs, M.D. and John Mather, M.D.) was proper, as the ALJ may consider the

opinions of non-examining physicians. *Id.* at 10, *citing* CFR § 404.1527; CFR § 416.927; SSR

96-6p. Defendant further contends that it was appropriate for the ALJ to consider the opinion of

Dr. Parvez, who examined Plaintiff and found no musculoskeletal or neurological abnormalities. *Id.* at 10-11. Defendant asserts that the ALJ noted that Plaintiff's blood pressure had stabilized subsequent to this examination. *Id*. at 10-11. Defendant further asserts that the ALJ appropriately evaluated the opinions of post-hearing consultative examining physicians Dr. Dake and W.R. Stauffer, M.D., giving Dr. Dake's opinion some weight and Dr. Stauffer's opinion no weight because it was overly restrictive in light of Dr. Stauffer's unremarkable physical examination of Plaintiff. *Id*. at 11. Defendant contends that the ALJ's evaluation of these two opinions is appropriate under SSA regulations and Sixth Circuit case law. *Id.* at 10-11. Defendant contends that Dr. Dake's specialization in family medicine does not warrant discounting his opinion, and argues that the ALJ did not assert Dr. Dake's specialization to be in orthopedics; rather, she merely stated that Dr. Dake provided an orthopedic consultative examination. *Id*. at 12, *referencing* TR 20.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative

examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .

    (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

    (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

    (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[2] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, she is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

Turning to Plaintiff's arguments regarding the ALJ's consideration of the opinions of his treating physician, Dr. Lewis, the ALJ in the instant action discussed Dr. Lewis's opinion and treatment records from Family Healthcare, where Dr. Lewis practiced, as follows:

> A review of the medical records shows that the claimant has a history of mild coronary artery disease, congestive heart failure, mild chronic obstructive pulmonary disease (COPD) with continued smoking, hypertension, and back pain. Exhibits 1F and 4F. The first treatment record after the alleged onset date, dated April 17, 2012, reflects that the claimant was laid off due to a near syncopal episode at work. It was noted that he had been lifting heavy tires at work and that he needed a lighter job. Otherwise, the claimant described his health as "good" and denied having any other cardiovascular complaints. It was noted that unemployment forms were completed and that light physical restrictions were recommended. Exhibit 4F.

TR 19, *citing* TR 314-18, 327-97.

The ALJ continued her discussion of Dr. Lewis's opinion and treatment records from

Family Healthcare as follows:

> [T]he claimant returned to his primary care provider at Family
> Healthcare on July 25, 2012. It was noted that his hypertension
> was "much better" since being laid off and that his congestive heart
> failure and chronic back pain were stable. The claimant again
> described his health as "good," and on examination he had a pre-
> hypertensive blood pressure of 130/80 mm Hg, normal oxygen
> saturation, full range of motion throughout, normal gait and
> strength, negative straight leg raises, and no swelling. The
> claimant was diagnosed with benign essential hypertension, benign
> hypertensive kidney disease, other primary cardiomyopathies,
> hyperlipidemia, chronic systolic heart failure, chronic kidney
> disease, lumbar degenerative disc disease, and congestive heart
> failure. Exhibit 4F.
>
> At a follow-up visit to Family Healthcare on November 8, 2012, it
> was noted that the claimant's hypertension, congestive heart
> failure, and lumbar degenerative disc disease were all stable. They
> were again noted to be stable on February 13, 2013, and the
> claimant had an unremarkable examination with findings of normal
> oxygen saturation, normal gait, full range of motion throughout,
> normal strength, and no edema. On May 15, 2013, the claimant
> reported having worsening back pain that radiated to his bilateral
> lower extremities. However, he again had an unremarkable
> examination with findings of normal oxygen saturation, normal
> lumbar range of motion, negative straight leg raises, intact
> sensation, and normal reflexes. At a follow-up visit to Family
> Healthcare on August 28, 2013, it was noted that the claimant was
> "now disabled and waiting for SS disability determination."
> However, it appears that this was merely a recitation of the
> claimant's self-report and not a medical opinion. Accordingly, it is
> not given any weight in assessing the claimant's ability to work,
> especially in light of the normal exam findings. The claimant's
> hypertension was noted to be well-controlled following a
> medication adjustment, and his cardiomyopathy was found to be
> stable with no overt congestive heart failure. The claimant again
> described his health as being "good," and on examination he had a

blood pressure of 120/90 mm Hg, normal heart and lung sounds, normal lumbar range of motion, and negative straight leg raises. However, it was noted that he had generalized tension in his paraspinous muscles. Exhibit 5F.

The undersigned notes that the claimant's primary care provider, Dr. Michael Lewis, noted that he did not do letters for disability without a letter from an attorney or from Social Security telling him exactly what they wanted. Exhibit 5F. Dr. Lewis completed a medical source statement on August 28, 2013, reflecting light lifting and carrying but reduced sitting, standing, walking, postural, manipulative, and environmental limitations. His opined sitting and standing and walking limitations would allow for only six hours of work in an eight-hour workday. Exhibit 6F.

On December 3, 2013, the claimant returned to Family Healthcare. He reported that he could no longer lift because of his back pain. However, aside from some generalized tension in his paraspinous muscles, he was again found to have normal oxygen saturation, normal range of motion throughout, normal strength, normal gait, and negative straight leg raises. He again had a normal examination on February 20, 2014, including findings of normal oxygen saturation and normal heart and lung sounds. Exhibit 7F.

TR 20-21, *citing* TR 328-331, 398-418, 420-28.

The ALJ continued:

The claimant also returned to Family Healthcare after the May hearing. Treatment records dated May 21, 2014, through December 23, 2014, reflect consistently unremarkable examination findings of normal oxygen saturation, normal heart and lung sounds, full ranges of motion, normal gait, normal strength, negative straight leg raises, and intact sensation. The undersigned notes, however, that the claimant complained of ongoing back pain and stiffness and that he was found to have generalized tension in his paraspinous muscles. On June 23, 2014, it was noted that the claimant's hypertension was not controlled, but on September 23, 2014, and December 23, 2014, it was noted that his blood pressure was controlled. Exhibit 10F.

TR 22-23, *citing* TR 454-71.

The ALJ concluded her discussion of Dr. Lewis's opinion with the following:

> Dr. Lewis's treating source statement at Exhibit 6F is given some weight, particularly his assessed lifting, carrying, and environmental limitations and his restriction of no climbing of ladders. However, Dr. Lewis's opined sitting, standing, walking, pushing, pulling, and postural limitations are overly restrictive given the unremarkable examinations, the claimant's mild COPD, and his oft-reported stable and controlled hypertension. Also, Dr. Lewis's opinion that the claimant will miss about two days of work per month is not credited as there is no evidence of periods of significantly exacerbated symptoms. The undersigned notes that the claimant's representative argued that Dr. Lewis's assessment should be given controlling weight. However, his assessment is not entitled to controlling weight as it is inconsistent with other substantial evidence. Further, Dr. Lewis's assessment is somewhat questionable as he noted that he did not complete disability paperwork unless he was told exactly what was wanted.

TR 24.

Dr. Lewis treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's according greater weight to his opinion than to other opinions, as long as that opinion was supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. As can be seen, however, Dr. Lewis's restrictions contradict other substantial evidence in the record, including his own treatment notes. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See, e.g.,* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR

§ 416.927(e)(2).  As can be seen in the quoted passages above, the ALJ explained her reasons for not assigning controlling weight to Dr. Lewis's opinions.  Because Dr. Lewis's opinion was inconsistent with other substantial evidence in the record, the Regulations do not mandate that the ALJ accord Dr. Lewis's evaluation controlling weight.

Moreover, while Plaintiff argues that assigning "some weight" to Dr. Lewis was ambiguous, the ALJ continued by detailing which restrictions she adopted and which she rejected.  TR 24.  Although Plaintiff is correct that the ALJ misstated Plaintiff's blood pressure as controlled on December 23, 2014, this single misstatement was harmless error since the ALJ properly considered the record as a whole, and Plaintiff has failed to show that the error regarding a single finding from a single appointment would alter the ALJ's decision.  Thus, this does not provide a basis for reversal or remand.

Plaintiff's argument that the ALJ had a duty to re-contact Dr. Lewis to clarify his opinion also fails.  Regarding an ALJ's responsibility to contact a physician for the clarification of an opinion, the Sixth Circuit has held that "an ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 n. 3.  An ALJ is not required to re-contact a physician when the ALJ rejects the limitations recommended by that physician.  *Id.* Here, when determining the extent to which Dr. Lewis's opinions should be adopted, the ALJ considered the evidential record as a whole, including the treatment records from Dr. Lewis and Family Healthcare.  As discussed above, Dr. Lewis's treatment records were inconsistent with the limitations he opined; thus, the ALJ had no duty to contact Dr. Lewis for further clarification regarding his opinion.  *See* 20 CFR § 404.1512(e); *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d.

269, 274–75 (2010).  Accordingly, Plaintiff's argument that the ALJ erred by improperly

weighing Dr. Lewis's opinion fails.

Turning next to Plaintiff's argument that the ALJ erroneously weighed the opinions of the

State agency medical consultants and Dr. Parvez, the ALJ discussed the opinions of Dr. Parvez

as follows:

> On July 14, 2012, the claimant underwent a medical consultative
> examination conducted by Dr. Babar Parvez.  He complained of
> easy fatigability, shortness of breath, and bilateral leg swelling after
> prolonged periods of standing.  However, he stated that he could
> lift twenty pounds.  On examination, the claimant had an elevated
> blood pressure of 190/110 mm Hg but normal heart and lung
> sounds.  He had normal range of motion in all joints, normal
> muscle strength in his bilateral upper and bilateral lower
> extremities, normal grip strength, intact sensation, and normal gait
> and station.  He had no neurological deficits, extremity swelling, or
> edema.  Based on his overall examination, Dr. Parvez diagnosed
> the claimant with uncontrolled blood pressure and congestive heart
> failure and opined that he could lift, push, and pull more than
> twenty to thirty pounds but that it would not be advisable with
> elevated blood pressure.  Dr. Parvez also opined that the claimant
> could bend, stoop, squat, kneel, crawl, and crouch.  He noted that if
> the claimant's blood pressure was controlled he might be able to
> continue his prior activities.  Exhibit 3F.

TR 20, *citing* TR 323-25.

Of the opinions of Dr. Parvez and the State agency medical consultants, the ALJ stated:

> Overall, the limitations outlined in the above residual functional
> capacity are consistent with the evidence as a whole.  Accordingly,
> the undersigned gives great weight to the State agency medical
> consultants' assessments at Exhibits 1A, 2A, 5A, and 6A and Dr.
> Parvez's consultative examination assessment at Exhibit 3F as they
> are the most consistent with the above residual functional capacity.

TR 23-24, *referencing* TR 95–112, 115–34, 323–25.

An ALJ may consider the opinion of a non-examining physician designated by the

Secretary in determining whether a claimant has medically determinable impairments. *Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927, 930 (6th Cir. 1983). Thus, it was within the ALJ's province to consider the non-examining State agency medical consultants. While the ALJ's statements regarding the State agency medical consultants' opinions are cursory, this does not warrant remand or reversal because, as discussed above, the ALJ based her decision on a review of the record as a whole and relied on examining medical opinions, along with the State agency medical consultants, to determine Plaintiff's impairments and limitations.

Additionally, while Plaintiff argues that the ALJ failed to address Dr. Parvez's note that Plaintiff would need medical clearance to return to work, the ALJ expressly discussed this conditional statement in her decision. TR 20. In doing so, it is clear that the ALJ was aware of and considered the statement in her analysis. Thus, the ALJ appropriately gave great weight to Dr. Parvez's opinions, and Plaintiff's argument regarding the weight afforded to the opinion of Dr. Parvez fails.

Turning next to Plaintiff's argument regarding the ALJ's consideration of Dr. Dake's consultative examination, the ALJ discussed Dr. Dake's opinions as follows:

> After the May hearing, the claimant was sent to two consultative examinations. On June 7, 2014, he met with Dr. Thomas S. Dake for an orthopedic consultative examination. The claimant reported that he could not lift groceries, cook, shop, or clean but that he could bathe and dress himself, drive, walk from his car into the mall without assistance, and sit through a movie. He mentioned that he used a wheelchair when his back was bothering him but stated that a wheelchair had not been prescribed. On examination, the claimant had an elevated blood pressure but normal heart sounds with no edema. He had full lumbar range of motion with negative straight leg raises, normal grip strength, normal fine and gross manipulation, normal strength and reflexes, intact sensation, and normal gait. Based on his overall examination, Dr. Dake

assessed medium exertional limitations with occasional pushing
and pulling with the bilateral upper extremities; occasional
climbing and crawling; and frequent balancing, stooping, kneeling,
crouching, and crawling. The undersigned notes an internal
inconsistency in that Dr. Dake limited the claimant to occasional
lifting and carrying of up to thirty pounds in a narrative statement
but occasional lifting and carrying of up to fifty pounds on a
medical source statement form. Exhibit 8F.

TR 22, *citing* TR 429-40.

The ALJ ultimately accorded Dr. Dake's assessment "some weight," explaining:

As for the post-hearing consultative examinations, the undersigned
gives some weight to Dr. Dake's assessment at Exhibit 8F as it is
more consistent with examination findings. However, his
restrictions of occasional pushing and pulling with bilateral upper
extremities and occasional climbing of stairs are overly restrictive
given the unremarkable physical examinations.

TR 24, *referencing* TR 429-40.

First, Plaintiff's assertion that the ALJ may have assigned weight to Dr. Dake's opinion

based on the erroneous belief that he specialized in orthopedics is unfounded because, as can be

seen, the ALJ simply said that Dr. Dake provided an orthopedic examination; she did not state

that Dr. Dake was an orthopedic specialist. *See* TR 22. Further, Plaintiff cannot sustain his

argument that the ALJ's accordation of "some weight" to Dr. Dake's opinions was ambiguous

because the ALJ expressly stated the findings that she would not be adopting and provided

sufficient rationale for not adopting those findings. TR 24.

As has been demonstrated, the ALJ considered the medical opinion evidence of record as

a whole when determining the weight accorded to each opinion; she explained the weight

accorded to each opinion and the reasons therefore, and her determination was supported by

substantial evidence. Accordingly, Plaintiff's argument that the ALJ committed reversible error

regarding the weight afforded to the medical opinion evidence of record fails.

## 2. Residual Functional Capacity ("RFC")

Plaintiff maintains that the ALJ erred by failing to address the inconsistencies between her RFC finding and the opinion of Dr. Parvez, despite according the opinion of Dr. Parvez great weight. Docket No. 15, p. 19. Plaintiff further contends that the ALJ "minimized and misrepresented and/or mischaracterized Dr. Parvez's statements in her decision," such that the ALJ's decision is not supported by substantial evidence. *Id.* at 19-20. Specifically, Plaintiff argues that the ALJ erroneously stated that Plaintiff's hypertension was under control and did not acknowledge Dr. Parvez's opinion that Plaintiff would need to be cleared for work by his primary care physician and cardiologist.[3] *Id.*

Defendant responds that the ALJ's RFC findings and analysis were made in accordance with SSA regulations and policies. Docket No. 16, p. 12. Defendant contends that the ALJ was justified in including in the RFC only the limitations that she found credible. *Id.* at 13. Defendant asserts that, when determining Plaintiff's RFC, the ALJ properly considered the medical opinion evidence, Plaintiff's impairments, and Plaintiff's credibility. *Id*. at 13-14. Defendant contends, therefore, that the ALJ's RFC finding was proper and should be affirmed. *Id*. at 14.

---

[3]Plaintiff also alludes to the proposition that the RCF analysis should be performed as a "function-by-function" assessment, but does not develop an argument based on that proposition. *Id.* at 17. "Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (internal quotation marks omitted). Because Plaintiff has failed to elaborate or in any way further develop an argument related to function-by-function assessment, the undersigned construes this argument as waived. Accordingly, the undersigned will not further address this issue.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations:

> Specifically, he is limited to lifting or carrying twenty pounds occasionally and ten pounds frequently; sitting, standing, or walking six hours total each in an eight-hour workday; never climbing ladders, ropes, or scaffolds; frequently climbing ramps and stairs; and avoiding concentrated exposure to fumes, odors, gases, or dusts, as well as extreme temperatures and all hazards in the workplace such as unprotected heights and moving machinery.

TR 19.

As discussed in the statement of error above, in so finding, the ALJ appropriately considered and evaluated the medical opinion evidence, including, *inter alia*, the medical records from Dr. Lewis and Family Healthcare. TR 19-24. Additionally, the ALJ considered the following objective medical findings and treatment records, stating:

23

While diagnostic imaging showed evidence of severe spondylosis, treatment records reflect consistently unremarkable examinations with findings of normal gait, normal strength, intact sensation, full ranges of motion, and unremarkable straight leg raises. He reported using a wheelchair when his back was bothering him. However, he mentioned that a wheelchair had not been prescribed. Further, there is no mention of a wheelchair or any other assistive ambulatory device in the treatment records. Per the claimant's own reports, he can lift up to twenty or twenty-five pounds, and there is no objective evidence to support his testimony that he can only lift five pounds, that he would be limited to sitting, standing, and walking for only a few minutes at a time, or that he needs to spend most of his days lying down. In fact, the claimant was observed sitting throughout the entire second hearing with no indication of pain or discomfort. In addition, treatment records at Exhibits 4F, 5F, 7F, and 10F show that the claimant consistently denied being fatigued and consistently described his health as "good."

The claimant has had some elevated blood pressure readings, but treatment records also reflect that his hypertension was at times stable and controlled and that cardiovascular examinations were consistently normal, including findings of no edema. It was also noted in August 2013 that there were no overt signs of congestive heart failure. The claimant's representative stated at the May 2014 hearing that the claimant had an ejection fraction of twenty-eight percent, but Exhibit 5F shows that his [*sic*] was back in 2008 and that the claimant's last echocardiogram had shown a significantly improved ejection fraction of fifty-eight percent. As for the claimant's COPD, there is no indication that it is more than mild in severity, and treatment records show that the claimant consistently had normal lung sounds and normal oxygen saturation. While the claimant's symptoms may have some impact on his ability to perform daily living activities, the objective medical evidence does [not][4] indicate that he is as limited as alleged.

TR 23, *referencing* TR 327-419, 422-28, 454-71 (footnote added).

The ALJ also considered Plaintiff's function reports. TR 20, 24. Specifically, the ALJ

---

[4] A reading of the ALJ's decision indicates that her omission of the word "not" was a typographical error. Based on the ALJ's discussion of the evidence and articulated rationale, it is clear that the ALJ meant to say "the objective medical evidence does *not* indicate that he is as limited as alleged."

stated:

> On June 3, 2012, a function report was completed by the
> claimant's wife for the claimant.  In the report, it was noted that the
> claimant performed self-care tasks without any problems and drove
> but did not do any household chores because of pain.  It was noted
> that his wife did the cooking because he did not eat what he was
> supposed to.  The claimant reported that he could lift up to twenty-
> five pounds, sit and stand each for two hours during the day, and
> walk for ten minutes before needing to rest.  He further alleged
> having problems with squatting, bending, reaching, kneeling,
> climbing stairs, completing tasks, and using his hands.  Exhibit 3E.

TR 20, *citing* TR 264-71.

The ALJ concluded her analysis of Plaintiff's function report and treatment records as

follows:

> Lastly, in the function report at Exhibit 3E it was noted that the
> claimant's medications made the claimant vomit and pass out and
> caused muscle, stomach, and back pain and weakness.  However,
> the treatment records do not corroborate such complaints, and as
> noted above the claimant consistently described himself as being in
> good health.  Accordingly, the undersigned finds that the
> claimant's medications will not affect his ability to perform work
> activity within the above residual functional capacity.

TR 24, *referencing* TR 271.

The ALJ additionally considered Plaintiff's testimony, daily activities, and credibility,

stating:

> On May 8, 2014, the claimant presented for a hearing.  He testified
> that he could not work because he had to sit all the time and get up
> all the time.  He stated that he got fluid on his hands and face and
> that he got dizzy when picking things up due to his high blood
> pressure.  He also mentioned that his ankles and hands swelled
> once every two weeks.  The claimant testified that medications for
> his blood pressure and back helped although he alleged a back pain
> rating of nine out of ten (with ten being the worst pain) even with
> medication.  He stated that muscle spasms in his back limited his

> ability to sit and stand and that he could only sit, stand, and walk
> for fifteen minutes at a time each and lift five pounds. He testified
> that he spent most of his days lying down.
>
> When asked about his activities, the claimant stated that he does a
> little yard work, uses the computer, and plays video games. He
> stated that he does not do much around the house but that he does
> laundry and sometimes loads the dishwasher. He testified that he
> is afraid to drive because of his medications and blood pressure.

TR 21-22.

The ALJ continued her discussion of Plaintiff's testimony, daily activities, and credibility

as follows:

> On request from his representative, the claimant returned for a
> supplemental hearing on January 29, 2015. He testified that his
> blood pressure continued to be high and that additional
> medications were not helping. He added that his blood pressure
> the day of the hearing was 184/100 mm Hg. He stated that he
> needed heart stents but that he could not afford the procedure.
>
> After careful consideration of all of the evidence, the undersigned
> finds that the claimant's medically determinable impairments could
> reasonably be expected to cause some of the alleged symptoms;
> however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not entirely
> credible for the reasons explained in this decision.

TR 23.

As has been demonstrated, the ALJ evaluated all of the objective, opinion, and

testimonial evidence of record, and ultimately determined that Plaintiff retained the RFC to

perform light work with additional limitations. TR 19. When contradictory evidence in the

record exists, the final decision regarding the evaluation of the evidence as a whole lies with the

Commissioner. *See, e.g.*, 20 CFR § 416.927(e)(2). Moreover, Plaintiff provides no authority for

the proposition that a medical opinion must be accepted or rejected in its entirety, and neither

Sixth Circuit case law nor Social Security Regulations so require; rather, an ALJ's RFC finding should be based on the record as a whole. Because there was contradictory evidence in the record and because the ALJ in the case at bar properly evaluated all of the objective, opinion, and testimonial evidence and reached a reasoned decision that was supported by substantial evidence, Plaintiff's argument that this case warrants reversal or remand because the ALJ assigned great weight to Dr. Parvez's opinion without adopting all of his findings wholesale fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's "Motion for Judgment on the Administrative Record" be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge